**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**COLUMBUS MCKINNON CORPORATION,**

                                **Plaintiff,**                **03-CV-0831S(Sr)**

**v.**

                                                           **ORDER**

**HEALTHNOW NEW YORK, INC.,**

                              **Defendant.**

---

### DECISION AND ORDER

        This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1)(A), for all pretrial matters, and for hearing and disposition of all non-dispositive motions or applications.  Dkt. #14.

        Currently before the Court is plaintiff's motion seeking sanctions, pursuant to Fed. R. Civ. P. 37(b), for contempt of this Court's Order (Dkt. #63), and seeking to reinstate its prior motion (Dkt. #47), to amend its complaint to add a cause of action pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO").  Dkt. #64. For the following reasons, plaintiff's motion for sanctions is granted and plaintiff's motion to amend its complaint to assert a civil RICO cause of action is granted.

### MOTION FOR SANCTIONS

        Plaintiff served its First Set of Interrogatories and First Request for Production of Documents upon defendant on February 8, 2005.  Dkt. #49.  Of relevance to the instant motion, plaintiff propounded the following interrogatory:

22. For each withdrawal made by Defendant from Plaintiff's Fleet Account, itemized on the attached Schedule A, state how, to whom and for what purpose each sum was distributed.

Dkt. #49, Exh. C.   Plaintiff also served the following document demands:

13. All documents relating to Defendant's withdrawal of moneys from Plaintiff's and/or Plan's Fleet bank account to Defendant's account(s).

14. All documents relating to the disbursement by Defendant of moneys transferred from Plaintiff and/or Plan's Fleet Bank account to Defendant, including all documents relating to [how] the payments identified in answer to interrogatory 22 were disbursed.

22. All documents related to Defendant's payment of health care providers for services rendered to participants in the Plan.

Dkt. #49, Exh. D.


        Defendant responded to Plaintiff's First Set of Interrogatories on May 25, 2005 and to Plaintiff's First Request for Production of Documents on June 15, 2005. Dkt. #49, ¶ 5.  By letter dated July 25, 2005, plaintiff's counsel objected to defendant's responses as deficient.  Dkt. #49, ¶ 6.   As relevant to the instant motion, plaintiff's counsel requested that defendant "provide all documents detailing how, to whom and for what purpose each reimbursed sum was paid out by HealthNow, including all original invoices received from the individual healthcare providers for all claims administered by Defendant which it paid and for which it sought and obtained 'reimbursement' from Plaintiff."  Dkt. #49, Exh. E.  After discussion between counsel for the parties, defense counsel agreed, by letter dated September 13, 2005, that

> Defendant shall produce all documents in its possession, custody or control concerning its application of funds from plaintiff's account; and

> Defendant shall produce an interrogatory response stating the amount of access fees paid by plaintiff, the amount of unpaid access fees recoverable pursuant to its counterclaim and an explanation for each of these calculations.

Dkt. #49, Exh. G.

Plaintiff's counsel affirms that defense counsel agreed to produce its supplemental discovery responses by October 4, 2005.  Dkt. #49, ¶ 12.  However, on October 4, 2005, defense counsel asked to reschedule a meeting to exchange these documents to October 5, 2005.  Dkt. #49, ¶ 12.  On October 5, 2005, defense counsel assured plaintiff's counsel that defendant was working on its supplemental responses, but requested a week extension.  Dkt. #49, ¶ 12.  On October 20, 2005, defense counsel advised that it could take several months to retrieve the supplemental discovery documents.  Dkt. #49, ¶ 14.  By letter dated October 24, 2005, defense counsel advised that

> with regard to the location of documents detailing how funds obtained from Columbus McKinnon were disbursed by HealthNow, our client is still in the process of attempting to locate and/or identify the same.  My client believes that to the extent such documents may exist and/or are maintained electronically, the process to retrieve any such documents may take several months to complete.

Dkt. #49, Exh. H.  On October 31, 2005, plaintiff moved, pursuant to Fed. R. Civ. P. 37(b), to compel defendant to supplement its responses to Plaintiff's First Set of Interrogatories and Plaintiff's First Request for Production of Documents.  Dkt. #49.

By letter dated November 16, 2005, defense counsel advised that:

> With respect to the production of all responsive documents, I advised in my August 5, 2005 correspondence that all documents requested in plaintiff's first request for production of documents were produced and/or made available.[1]  Your request that we produce documents concerning HealthNow's application of funds for plaintiff's account is essentially a new request not previously made in your first request for production of documents.  Notwithstanding this, to avoid motion practice, we agreed to produce documents responsive to your request.  We are in the process of gathering this information and we anticipate that this process will take up to an additional month.

Dkt. #56, Exh. A.  In response to the motion, defense counsel declared that:

> With respect to the documents evidencing HealthNow's application of funds from plaintiff's bank account . . . HealthNow has agreed to produce all responsive documents in its possession as soon as they can be identified and/or located.  Since that time, HealthNow's representatives have been engaged in an exhaustive search for all responsive documents.  Attempting to locate the documents has proved somewhat problematic because of the numerous withdrawals made by HealthNow from plaintiff's bank account from 1998 through 2003.  Furthermore, the documents requested were generated, maintained and/or stored by various individuals and departments within HealthNow and many of the documents are only stored electronically and may be required to be downloaded to a compact disc in order to be produced.

Dkt. #56, ¶ 5.  Defense counsel represented that "HealthNow expects that it will be in a position to produce the requested documents within the next thirty (30) to forty-five (45) days."  Dkt. #56, ¶ 6.  At oral argument on plaintiff's motion to compel, defense counsel represented that they had "people working on" plaintiff's request for an itemization regarding the disbursement of funds from its bank account.  Accordingly, this Court

---

[1] The documents referenced appear to be approximately 28,000 pages of records contained in 11 boxes.  Dkt. #64, ¶ 16.

directed "defendant to produce itemization of withdrawals by 1/13/2006 or certify why such records have not been produced and to certify production of all other requested records."  Dkt. #63.

On January 13, 2006, defense counsel declared that "all records detailing and demonstrating how, to whom and for what purpose each sum withdrawn and/or transferred from Columbus McKinnon Corporation's . . . Fleet Bank account was paid out by HealthNow have been or will be produced during the course of discovery in this action."  Dkt. #64, Exh. A.  Defense counsel also declared that "[a]ll of the subject documents detailing HealthNow's application of funds from plaintiff's bank account, with the exception of monthly reports detailing administrative claims charges paid, were previously produced in discovery and/or made available for [Columbus McKinnon's] review and inspection at HealthNow's offices in August 2005."  Dkt. #64, Exh. A. Defense counsel further declared that:

> The only information not previously produced by HealthNow or made available for [Columbus McKinnon's] review and inspection are Monthly Administrative Claim Reports detailing the amounts of each administrative claim charged to [Columbus McKinnon].  The Monthly Administrative Claim Reports do not contain any information concerning payment of access fees.  This information is maintained electronically and will be made available upon reasonable notice.

Dkt. #64, Exh. A.

On January 23, 2006, plaintiff's counsel met with defense counsel "specifically for the purpose of having defense counsel identify those documents which

the defendant maintains answers plaintiff's continuing question of how HealthNow spent the money it took from [Columbus McKinnon's] Fleet bank account." Dkt. #64, ¶ 2.  Upon review, plaintiff's counsel affirms that for each month that counsel compared the weekly withdrawals from Columbus McKinnon's account to the weekly billing reports for the same time periods, "the amount withdrawn from [Columbus McKinnon's] account exceeded the amount reflected on the billing report." Dkt. #64, ¶ 15.  Thereafter, plaintiff's counsel avers that the parties agreed to depose a representative of HealthNow on February 22, 2006 to "explain the nature of the documents produced . . . and how they demonstrated what HealthNow did with the money that it took from [Columbus McKinnon's] account." Dkt. #64, ¶ 17.  Defense counsel postponed the deposition on February 21, 2006.  Dkt. #64, ¶ 18; Dkt. #67, Exh. A.

By Notice of Motion dated February 28, 2006, plaintiff moved for an order holding defendant in contempt of the Court's December 19, 2005 Order directing "defendant to produce itemization of withdrawals by 1/13/2006 or certify why such records have not been produced and to certify to production of all other requested records." Dkt. #64.  Plaintiff asks the Court to sanction HealthNow by striking defendant's answer and counterclaims, awarding attorneys' fees for the cost of the motion, and directing that HealthNow pay the projected $8,000 cost to photocopy the 28,000 documents HealthNow initially made available for inspection.  Dkt. #64.

On March 9, 2006, HealthNow's Senior Director of Finanance, Christopher Leardini, CPA, provided nearly seven hours of deposition testimony

concerning HealthNow's financial records.  Dkt. #66, ¶ 22.  Plaintiff's counsel avers that

> Mr. Leardini explained that in the case of a national account
> like Columbus McKinnon with subscribers receiving medical
> services through Blue Cross affiliates around the country,
> HealthNow is called the "home plan" and the other Blue
> Cross affiliates are called the "host plans."  It is in the case
> of subscribers using services through a host plan that
> access fees are incurred.  The national BlueCross
> BlueShield Association maintains another data system,
> CFA, ("Central Financing ___") which contains additional
> information as to host plan claims and the fees associated
> with those claims.  CFA generates and issues a morning
> "CFA report" that is essentially a bill to the local plan for
> payments made by all host plans for the local plan's
> subscribers.  Payment is then made by the local plan directly
> to the CFA pursuant to the morning CFA report.  CFA then
> in turn makes payment to the host plans, who in turn make
> payment to the individual providers.  It is those records of
> claims payment that are critical to a determination as to
> whether, when, and in what amounts access fees were paid
> to host plans from Columbus McKinnon's account.  Those
> records are also housed within the ITS[2] system . . ..

Dkt. #69, ¶ 34.  Mr. Leardini also testified that HealthNow has had the ability to access

the ITS system for information relevant to the processing of Columbus McKinnon's

claims at any time.  Dkt. #69, ¶¶ 38-39.

In response to plaintiff's motion, defense counsel declared that

subsequent to his certification, "HealthNow . . . located over 200 ITS tapes containing

the backup information for the weekly and monthly claims billing reports and drug

reports."  Dkt. #67, ¶ 9.  Defense counsel declares that "[t]his information merely

provided the detail for the claims and also had essentially already been produced."  Dkt.

#67, ¶ 9.  Accordingly, defense counsel declares that:

---

[2] ITS is the acronym for "Interplan System I."

HealthNow has literally opened the vault and made available for discovery and inspection all documents and other information in its possession, custody or control relating to the processing of McKinnon's benefits claims for the time period of the parties' contractual relationship, i.e., 1998-2002. This includes hard copies reflecting every claim of every McKinnon employee during this time period, literally millions of claims totaling approximately $60 million. In addition, HealthNow recently provided McKinnon with an opportunity to discover and inspect all of the compact disks and back up tapes used to compile the specific claims reports detailing each of these claims. To our knowledge, HealthNow does not have any other documents or other information responsive to McKinnon's document demands.

Dkt. #66, ¶ 3. Defense counsel also declares that:

15. HealthNow retained and stored throughout the course of this litigation all hard copies of financial-related documents in its possession, custody and control. These documents were produced for discovery and inspection to McKinnon in August 2005. They were also made available on January 23, 2006. After this Court's most recent order, HealthNow confirmed that these records included detailed information concerning every McKinnon benefits claim paid by HealthNow during the time period 1998-2002. The detailed information for each claim included the amount paid to the provider or subscriber for services rendered and any access fee charges paid to the host plan. It was also confirmed that the information used to compile this information were on back-up tapes stored in a secured off-site location.

Dkt. #66. Finally, defense counsel declares that

The 28,000 pages of records include, but are not limited to, hard copies of each and every claim submitted by a McKinnon employee that was paid by HealthNow. Starting in mid-2000, HealthNow's weekly invoices included the detailed claims information for each claim processed in a particular week. At McKinnon's request, HealthNow created monthly reports (from the disks and back-up tapes recently made available) that contained similar information for the claims processed prior to the middle of 2000.

Dkt. #66, ¶ 4.

HealthNow also submitted the declaration of its paralegal, Donna

Spencer, who "had the primary responsibility for gathering any and all documents and

records responsive to McKinnon's request."  Dkt. #68, ¶ 4.  Ms. Spencer declared that

> 5.  The task of collecting and maintaining any responsive
>     documents from the various HealthNow departments
>     and employees proved to be a monumental task insofar
>     as numerous departments totaling hundreds of
>     employees potentially had responsive documents.  Each
>     employee was required to not only search his or her
>     personal files for documents and information, he or she
>     was required to search and download any electronically
>     maintained information such as emails, memoranda and
>     correspondence.
>
> 6.  Additionally, much of the financial information
>     constituting the "backup" or "detail" for the weekly and
>     monthly claims billing reports, drug claims reports . . . is
>     and was retained electronically on compact discs or
>     tapes.  While most of the electronic information is
>     maintained separately for each client, a substantial
>     amount of electronic information is grouped or
>     categorized by year, thereby requiring a breakdown of
>     the information.  Several of the tapes, for reasons of
>     security and disaster prevention, are maintained off-site
>     and in a secure storage facility.
>
> * * *
>
> 9.  The only electronic information not previously produced
>     was compact disks containing copies of Monthly
>     Administrative Claim Reports detailing the amounts of
>     each administrative claim charged to [Columbus
>     McKinnon]K and ITS tapes containing the backup
>     information for the weekly and monthly claims billing
>     reports and drug reports.  The reason for not producing
>     such information initially is that HealthNow was required
>     to expend substantial time, resources and effort to
>     locate, identify and download such information.  This
>     process was complicated by the fact that many
>     employees responsible for generating and/or
>     maintaining such electronic information are no longer
>     employed by HealthNow.  Once the responsible

> employees were located who knew where the electronic
> information was located and how to download it, the
> information was quickly generated.

Dkt. #68.   Ms. Spencer concludes by certifying, based upon her "knowledge,

information and belief, and assurances received from all relevant HealthNow

employees, that all documents and information pertaining to McKinnon and the issues

of this litigation, whether maintained in hard copy or electronically, have now been

produced or made available for McKinnon's review and inspection."  Dkt. #68, ¶ 10.


Plaintiff's counsel disputes defendant's characterization of the documents

originally produced, affirming that the billing reports and invoices "do not establish how

HealthNow processed a single bill from a healthcare provider for payment and how the

funds taken from Columbus McKinnon's Fleet account to pay that bill were ultimately

disbursed."  Dkt. #69, ¶ 14.  Moreover, with respect to the 206 tapes, plaintiff's counsel

notes that

> HealthNow employee Madalyn Albanes stated that their
> computer equipment has a program that can scan the 206
> tapes and separate the Columbus McKinnon account
> information from other information.  She also stated that the
> Columbus McKinnon information can either be printed on
> paper or put into another electronic format

but no one within HealthNow had asked them to do that prior to two weeks before Mr.

Leardini's deposition.  Dkt. #69, ¶ ¶ 35, 41.  While plaintiff's counsel was on premises,

two other IT employees at HealthNow confirmed that "no request for these tapes or the

data therein had been made to their office until just recently . . .."  Dkt. #69, ¶ 40.  In

addition, plaintiff's counsel affirms that defendant failed to notify them of the availability

of the compact disks and backup tapes until the day of the Leardini deposition and did

nothing more than show her a storage rack in the basement computer room containing

206 computer tapes.  Dkt. #69, ¶ 31.

> By letter dated May 15, 2006, defense counsel states that
>
> HealthNow personnel have worked diligently to download
> the data relating to over fifty million (50,000,000) claims
> processed during the parties' relationship.  The data is ready
> for production.  The only issues concern format for
> transmitting the data from virtual storage to dvd, disk or
> other suitable means.  (Notably, this is the same data
> currently transcribed on the monthly and weekly reports
> already contained in the 28,000 pages of records that
> McKinnon still refuses to copy.)

By letter dated June 30, 2006, defense counsel represented that "HealthNow has

downloaded and produced a series of dvds [sic] containing all requested electronically-

stored information."

> In response, by letter dated September 20, 2006, plaintiff's counsel states

that plaintiff is

> unable to use the data in a manner that would even begin to
> explain how our client's monies were disbursed by
> HealthNow.  In short, we have not been able to identify "the
> itemization of the withdrawals," which was ordered by the
> Court.
>
> The information contained in the discs is not easily
> ascertainable, is not verifiable (no references to physicians'
> charges, payments to hospitals, payments to physicians,
> etc.) and at least three discs are completely undecipherable.
> With respect to the discs that are somewhat decipherable,
> we cannot match the claim numbers provided (which should
> have unique identifiers) to the document versions of claim
> charges. . . .
>
> Moreover, in a letter dated June 29, 2006, [defense counsel]
> acknowledged to us that Columbus McKinnon could not

access or interrupt [sic] critical data fields without "the
assistance of a HealthNow computer technician."  This is
because Blue Cross does not or will not "provide detailed
documentation or schema" so that the data can be properly
deciphered.  Since the Court has ordered itemization of
HealthNow's withdrawals, and given that this information is
material, necessary, and directly relevant to Columbus
McKinnon's claims (as well as necessary to defend against
HealthNow's counterclaim), it is incumbent upon HealthNow
to produce accessible and usable information.

At a status conference on September 28, 2006, defense counsel

represented that they would soon be in a position to provide plaintiff with the data

dictionary and file layout which would permit them to decipher the data contained on the

dvd's.

<u>DISCUSSION AND ANALYSIS</u>

Rule 37(b)(2) of the Federal Rules of Civil Procedure provide that:

If a party . . . fails to obey an order to provide or permit
discovery . . . the court in which the action is pending may
make such orders in regard to the failure as are just, and
among others the following:

(A) An order that the matters regarding whch the
order was made or any other designated facts shall
be taken to be established for the purposes of the
action in accordance with the claim of the party
obtaining the order;

(B) An order refusing to allow the disobedient
party to support or oppose designated claims or
defenses, or prohibiting that party from introducing
designated matters in evidence;

(C) An order striking out pleadings or parts
thereof, or staying further proceedings until the order
is obeyed, or dismissing the action or proceeding or

any part thereof, or rendering a judgment by default
against the disobedient party;

(D) In lieu of any of the foregoing orders or in
addition thereto, an order treating as a contempt of
court the failure to obey any orders except an order to
submit to a physical or mental examination;

(E) Where a party has failed to comply with an
order under Rule 35(a) requiring that party to produce
another for examination, such orders as are listed in
paragraphs (A), (B), and (C) of this subdivision,
unless the party failing to comply shows that that
party is unable to produce such person for
examination.

In lieu of any of the foregoing orders or in addition thereto,
the court shall require the party failing to obey the order or
the attorney advising that party or both to pay the
reasonable expenses, including attorney's fees, caused by
the failure, unless the court finds that the failure was
substantially justified or that other circustances make an
award of expenses unjust.

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court
has wide discretion in sanctioning a party for discovery abuses." *Residential Funding
Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)*, quoting Reilly v.
Natwest Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999), *cert. denied*, 528 U.S.
1119 (2000).  Thus, "[e]ven in the absence of a discovery order, a court may impose
sanctions on a party for misconduct in discovery under its inherent power to manage its
own affairs." *Id.* at 106-07.

In the instant case, plaintiff claims that HealthNow improperly deducted in
excess of $1,000,000 of  access and administrative expense fees from its bank account
in contravention of their agreement that the only fees to be charged Columbus

-13-

McKinnon was a fixed monthly charge per plan contract, while defendant counterclaims that Columbus McKinnon was required, but failed, to pay access fees exceeding $50,000 and administrative expense allowance fees exceeding $1,100,000.  Dkt. #19, ¶ 15;  Dkt. #30, ¶¶ 101-102 & 107-108.  Discovery of the apportionment of monies disbursed from Columbus McKinnon's bank account is, therefore, central to the resolution of this case.   As a result, the Court directed HealthNow to produce to Columbus McKinnon an itemization of withdrawals from Columbus McKinnon's account detailing to whom and for what purpose Columbus McKinnon's money was disbursed.  Dkt. #63.  Defendant has yet to produce such an itemization in a format which can be utilized by Columbus McKinnon.

Defendant's explanations for this failure are insufficient.  It is inconceivable to the Court that a sophisticated business whose billing transactions are conducted electronically would not have known to look for back up tapes of its computer system in response to this Court's directive.  Moreover, defendant's representation that the information on these tapes is duplicative of the 28,000 documents made available to plaintiff initially, and its suggestion that those 28,000 documents satisfied the Court's directive, is suspect in light of defendant's representations that there were additional records and recognition that those additional records were maintained electronically, but would take time to retrieve.  Dkt. #49, Exh. H; Dkt. #56, ¶ 5; Dkt. #64, Exh. A; Dkt. #68, ¶ ¶ 6, 9.  Defense counsel's representation to the Court that HealthNow should soon be able to provide Columbus McKinnon with a database from which it can extract this itemization does not excuse its extended delay.

As a result, the Court hereby orders HealthNow to reimburse plaintiff for the reasonable

cost of attorneys' fees incurred in moving for contempt of this Court's Order.  Dkt. #63.

If the parties are unable to agree to the reasonableness of such fees within 30 days of

the entry of this Order, plaintiff's counsel shall submit a billing report detailing its

computation of fees for services in support of the motion and defendant shall submit its

objections to such expenditures within 15 days thereafter.


## MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff moved for leave to file a third amended complaint to add a RICO

claim by Notice of Motion filed October 13, 2005.  Dkt. #47.   At oral argument, which

was held in conjunction with plaintiff's motion to compel discovery, the Court denied the

motion to amend without prejudice to renew so as to permit plaintiff the opportunity to

review the itemization of disbursements from plaintiff's bank account before it sought

permission to assert a civil RICO cause of action.  Dkt. #63.  Plaintiff renewed its

motion to amend the complaint on February 28, 2006.  Dkt. #64.


Defendant argues that plaintiff's proposed amendment is futile because

plaintiff cannot sufficiently plead the enterprise and pattern of racketeering elements of

a RICO claim.  Dkt. #53, p.2.  Specifically, defendant argues that plaintiff has failed to

satisfy the enterprise element of a RICO claim because plaintiff has not alleged any

involvement by a person other than defendant and its employees in the alleged

wrongdoing.  Dkt. #53, p.10.  In addition, defendant argues that plaintiff alleges a single

scheme, which is insufficient to satisfy the continuity requirement which is essential to

demonstrating a pattern of racketeering activity.  Dkt. #53, pp.10-13.  In sum, defendant asserts that plaintiff's allegations of a single scheme committed by a single entity against a single victim is insufficient to allege a RICO claim.  Dkt. #53, pp.12-13.

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave of court or by written consent of the adverse party.  Leave to amend is to be "freely granted" unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile.  *Foman v. Davis,* 371 U.S. 178, 182 (1962); *State Teachers Retirement Bd. v. Fluor Corp*., 654 F.2d 843, 856 (2d Cir. 1981); Fed. R. Civ. P.15(a).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  "Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted."  *W.R. Grace & Co. v. Zotos Int'l, Inc.*, 2000 WL 1843282 (W.D.N.Y. 2000).

"[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle [it] to relief."  *Milanese v. Rust-Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001), *citing Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  "Thus, while futility is a valid reason for denying a motion to amend, this is true only where it is beyond doubt that the

plaintiff can prove no set of facts in support of his amended claims." *Pangburn*, 200

F.3d at 70-71 (internal quotations and citations omitted).  The dismissal standard is no

different for civil RICO claims than for other claims.  *See H.J. Inc. v. Northwestern Bell*,

492 U.S. 229, 249-50 (1989); *McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir.

1992).

        RICO makes it "unlawful for any person employed by or associated with

any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's

affairs" through the commission of two or more statutorily defined crimes – which RICO

calls "a pattern of racketeering activity."  *Cedric Kushner Promotions, Ltd. v. King*, 533

U.S. 158, 161 (2001).

> To state a claim for damages under RICO a plaintiff has two
> pleading burdens.   First, he must allege that the defendant
> has violated the substantive RICO statute, 18 U.S.C. § 1962
> . . . .   In so doing, he must allege the existence of seven
> constituent elements: (1) that the defendant (2) through the
> commission of two or more acts (3) constituting a "pattern"
> (4) of "racketeering activity" (5) directly or indirectly invests
> in, or maintains an interest in, or participates in (6) an
> "enterprise" (7) the activities of which affect interstate or
> foreign commerce.  18 U.S.C. § 1962 (a) - (c) (1976).
> Plaintiff must allege adequately defendant's violation of
> section 1962 before turning to the second burden, *i.e.*,
> invoking RICO's civil remedies of treble damages, attorneys
> fees and costs.  To satisfy this latter burden, plaintiff must
> allege that he was "injured in his business or property *by
> reason of* a violation of section 1962."  18 U.S.C. § 1964 (c)
> (1976) (emphasis added).

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (internal case citation

omitted), *cert. denied*, 465 U.S. 1025 (1984).

An enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961.  The United States Supreme Court "has explained that a RICO enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  *First Capital Asset Mgmt v Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004), *quoting United States v. Turkette*, 452 U.S. 576, 583 (1981).  A group of corporations may comprise an association-in-fact enterprise.  *United States v. Huber*, 603 F.2d 387, 393-94 (2d Cir. 1979); see Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (corporate entity may be held liable as a defendant under RICO "where it associates with others to form an enterprise that is sufficiently distinct from itself.").   Thus, plaintiff's allegation that HealthNow and multiple affiliated Blue Cross PPO Plans formed an association-in-fact to provide managed healthcare services to Columbus McKinnon employees throughout the country (Dkt. #47, ¶¶ 103-107),  is sufficient to plead the enterprise element of a civil RICO cause of action.  *See Dana Corp. v. Blue Cross & Blue Shield of N. Ohio*, 900 F.2d 882, 887 (6th Cir. 1990).

> RICO defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" committed in a 10 year period.  18 U.S.C. § 1961(5).  To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are related, and that they amount to or pose a threat of continued criminal activity.

> The continuity necessary to prove a pattern can be either
> "closed-ended continuity" or "open ended continuity."
> Closed-ended continuity is demonstrated by predicate acts
> that amount to continued criminal activity by a particular
> defendant.  To satisfy closed-ended continuity, the plaintiff
> must prove a series of related predicates extending over a
> substantial period of time.

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)

(internal quotations and citations omitted).  "Although closed-ended continuity is

primarily a temporal concept, other factors such as the number and variety of predicate

acts, the number of both participants and victims, and the presence of separate

schemes are also relevant in determining whether closed-ended continuity exists."  *Id.*

However, multiple schemes are not required.  *H.J. Inc. v. Northwestern Bell*, 492 U.S.

299, 235, 240 (1989); *United States v. Indelicato*, 865 F.2d 1370, 1381 & 1383 (1989)

("We doubt that Congress meant to exclude from the reach of RICO multiple acts of

racketeering simply . . . because they further but a single scheme.").  Furthermore, the

"repeated infliction of economic injury upon a single victim of a single scheme is

sufficient to establish a pattern of racketeering activity for purposes of civil RICO.

*Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 963 (7th Cir. 1996), *quoting Liquid

Air Corp. v. Rogers*, 834 F.2d 1297, 1305 (7th Cir. 1987), *cert. denied*, 492 U.S. 917

(1989).  In the instant case, plaintiff's allegations that HealthNow committed numerous

acts of mail fraud, wire fraud and conversion of funds belonging to an employee welfare

benefit plan between 1997 and 2001 and then engaged in a separate scheme to

deceive the plaintiff from discovering this unlawful activity (Dkt. #47, ¶¶ 108-113), are

sufficient to meet the pleading requirements, under a closed-ended continuity theory, of

a pattern or racketeering.

-19-

While the proof used to establish the existence of an enterprise and a pattern of racketeering may coalesce, the enterprise must be an entity separate and apart from the pattern of activity in which it engages. *Turkette*, 452 U.S. at 583; *see First Capital*, 385 F.3d at 173 ("The enterprise must be separate from the pattern of racketeering activity and distinct from the person conducting the affairs of the enterprise.") (internal citations omitted). In the instant case, plaintiff alleges that in the course of HealthNow's participation in the association in fact comprised of HealthNow and the multiple affiliated Blue Cross PPO Plans, HealthNow committed numerous acts of mail fraud, wire fraud and conversion of funds belonging to an employee welfare benefit plan. Dkt. #47, ¶¶ 103-113. Thus, the enterprise is distinct from the pattern of racketeering activity in which HealthNow allegedly engaged.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Dkt. #64), seeking sanctions for defendant's failure to comply with this Court's Order entered December 19, 2005 (Dkt. #63), and leave to amend its complaint to assert a civil RICO cause of action is granted.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **September 29, 2006**

                                        **S/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**